FISHER | TAUBENFELD LLP

225 Broadway, Suite 1700
New York, New York 10007
**Main** 212.571.0700
**Fax** 212.505.2001
www.fishertaubenfeld.com

Writer's direct dial: (212) 571-0700 ex. 102
Writer's email: michael@fishertaubenfeld.com

October 31, 2023

**VIA ECF**
Hon. Katharine H. Parker
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

   Re: Rosario v. Maryann's 353 Mex, Inc. et al.
     Case No.: 23-cv-1851 (KHP)

Dear Judge Parker:

  We represent Plaintiff in this action. The parties write to respectfully request that the Court approve their settlement as fair and reasonable under Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).

  **1. Factual Background.**

  Plaintiff worked as a food runner for the Company from 2014 until April 2022, except during a period during the pandemic when he did not work or worked fewer hours. Plaintiff contends that during his employment, Defendants never provided him with a wage notice or with a paystub that accurately reflected his pay. Plaintiff also alleges that he generally worked approximately 56 hours per week, often working double shifts on Mondays, Thursdays, and Fridays from 10 a.m. to as late as 1 a.m. or 2 a.m., and Saturdays from 10 a.m. to 5 p.m., with no meal breaks. According to Plaintiff, Defendants, however, only paid him a flat rate of $20 per shift until 2019, when it began to pay him $30 per shift. Though wait staff shared tips with Plaintiff, he claims his hourly wage was far below the minimum wage required by state and federal law, and he was never paid the required overtime rate for any hours worked above 40 per week or for his spread-of-hours payments.

  Plaintiff also alleges that Defendants retaliated against him. According to Plaintiff, he was never permitted to clock in or out of any of his shifts, though he was aware that Defendants operated a timekeeping system. As a result, Plaintiff claims that his wage statements incorrectly

reflected that he was paid for only a small percentage of the hours he worked each week. According to Plaintiff, when he asked his coworkers and manager about Defendants' pay practices and the discrepancy between his paychecks and the amount of time he actually worked, the response was only "this is the way [Mr. Then] pays people." In late April 2022, Mr. Rosario asserts that he complained to Defendant Then about his paycheck not reflecting the number of hours he actually worked.  In response, according to Plaintiff, Defendant Then, terminated Plaintiff's eight-year employment.  Defendants deny Plaintiff's allegations.

Shortly after Plaintiff filed this action earlier this year, the parties entered into settlement negotiation.  Plaintiff calculated that he was owed approximately $200,00.00 in damages, plus liquidated damages, NYLL 195 damages and retaliation damages.  During negotiations, Defendants strongly disputed Plaintiff's factual allegations and, most importantly, argued that they could not pay the settlement amounts demanded by Plaintiff. The parties engaged in document discovery.

The parties then attended a settlement conference before the Court, at which time the parties reached a settlement with the Court's helpful guidance.  The parties then finalized a written agreement. (**Exhibit 1**). Under the Agreement, Plaintiff is to receive $72,000 over 24 months. Defendants have signed confessions of judgment and in the event Defendants breach the agreement, they will owe an additional $15,000 in attorneys' fees and costs.  Both parties agree to mutual general releases.  There is no confidentiality or nondisparagement clauses in the agreement.

Under the Agreement, of the $72,000, Plaintiff will receive $47,585.33, and my firm will receive $24,414.67 in attorneys' fees and costs, which represents one-third of the settlement amount after $622 in costs, which represent the $402 filing fee and $220 in service costs.

**2. The Settlement is Proper Under Cheeks.**

The Court should approve the settlement.  In determining whether to approve a settlement, courts often look at the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

Guajardo v. Titan Constr. Servs. LLC, No. 19-CV-1551 (OTW), 2020 WL 1922642, at *2 (S.D.N.Y. Apr. 21, 2020).

The settlement is reasonable under these factors.  The settlement amount, after fees and costs, constitutes approximately 20% of Plaintiff's best-case unpaid damages under the FLSA and NYLL.  Given the significant the risks and burdens of this litigation, however, that amount is justified.  Notably, as explained above, Defendants heavily dispute Plaintiff's al7legations and

2

most importantly do not appear capable of paying a substantial judgment if Plaintiff were to succeed at trial.  Given all of these risks, Plaintiff benefits from receiving a large portion of his damages now, which is secured by a confession of judgment, as opposed to waiting potentially years to recover and taking the risk of recovering nothing at all.

Further, the parties negotiated in good faith and at arms-length with the Court's assistance.  The settlement allows the parties to avoid all of the risks and expenses of litigation, which in this case would be extensive given the claims.  Finally, there is obviously no fraud or collusion involved here.

Notably, no extra factors support denying the settlement.  The Court brokered the settlement, which is a strong indication that it is reasonable.

Finally, the attorneys' fees are reasonable.  Under the agreement, my firm will receive $24,414.67 in attorneys' fees and costs, which represents one-third of the settlement net of costs, plus costs.  Courts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases net of costs. Guajardo, 2020 WL 1922642, at *3; Meza v. 317 Amsterdam Corp., No. 14-CV-9007 (VSB), 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015); Merino Leon v. Univ 45 Fruit & Vegetable Corp., No. 19-CV-8266 (RA), 2020 WL 1322580, at *2 (S.D.N.Y. Mar. 20, 2020); Carrion v. 381 North Ave. Auto Care Inc. et al, Case No. 19-CV-05901 (Magistrate-Judge Davison - October 29, 2019).

If the Court wishes to engage in a lodestar check, Plaintiff's attorneys' fees are $7,440 and we are receiving $23,792.67 under the agreement.  Plaintiff is therefore requesting a multiplier of 3.2, which is reasonable because this case settled early before motion practice or significant discovery and the parties actively worked together to minimize costs.   Courts have recognized that reducing fees below the typical one-third because of early settlement has the "potential to create a disincentive to early settlement."  Hyun v. Ippudo USA Holdings, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (quoting McDaniel v. Cty. of Schenectady, 595 F.3d 411, 418 (2d Cir. 2010)).  Courts have also approved lodestars exceeding as much as 5 in FLSA cases.  See, e.g., Pinzon v. Jony Food Corp., No. 18-CV-105 (RA), 2018 WL 2371737, at *3 (S.D.N.Y. May 24, 2018) (approving lodestar of 5.23 and citing cases awarding lodestars as high as 6).

I am the only attorney who worked on this case.  I am requesting an hourly rate of $500.  I am a partner at Fisher Taubenfeld LLP.  I was admitted to the Bar of the State of New York in 2008 and since then have practiced labor and employment law, with a strong focus on wage-and-hour law.  I have litigated as the primary attorney dozens of FLSA cases and have been designated class counsel in a FLSA case in this District in Gonzalez et al v. Allied Concrete Industries Inc. et al., EDNY Case No.: 2:14-cv-4771 (GRB)(SIL), where I recently won partial summary judgment in the hundreds of thousands of dollars for the class. I have also successfully won appeals in wage-and-hour matters before the Second Circuit and New York courts. Catzin v. Thank You & Good Luck Corp., 899 F.3d 77 (2d Cir. 2018); Hichez v. United Jewish Council of the E. Side, 179 A.D.3d 576, 117 N.Y.S.3d 214 (N.Y. App. Div. 2020).  I am a member of the New York chapter of the National Employment Lawyers Association (NELA-NY) and have been invited to give CLEs on the FLSA.  I have also been named a "Rising Star" by Super Lawyers.

Another court in this Circuit recently approved $500 an hour for a named partner in a FLSA case. Canales v. Norwich Serv. Station Inc., No. 20-CV-4759(JMW), 2021 WL 5759727, at *5 (E.D.N.Y. Dec. 3, 2021).

The remainder of the work was performed by Madeline Howard. Ms. Howard graduated from CUNY School of Law in summer 2022. She interned in the Labor Bureau of the New York Office of the Attorney General in 2021 and for the Member Legal Services program at AFSCME District Council 37 in 2022. She performed labor and employment-focused clinical work in the Workers' Rights clinic at CUNY Law for two semesters. Courts award $75 per hour for preadmission attorneys. Dacas v. Duhaney, No. 17CV3568EKSMG, 2020 WL 4587343, at *4 (E.D.N.Y. June 18, 2020), report and recommendation adopted, No. 17-CV-3568(EK)(SMG), 2020 WL 4586371 (E.D.N.Y. Aug. 10, 2020).

The hours expended are appropriate as well. I spent 13.8 hours on this matter and Ms. Howard spent 7.2 hours. The work performed in this case included meeting with the client, drafting the complaint, drafting and responding to document discovery, undergoing settlement discovery, drafting damages calculations, attending the settlement conference, negotiating the settlement and reviewing the settlement documents, and drafting the settlement approval documents. (Exhibit 2). The fees are therefore appropriate. Accordingly, the Court should approve Plaintiff's attorneys' fees.

Thank you for your attention to the above.

Respectfully Submitted,
--------------------/s/----------------
Michael Taubenfeld

Encl.